UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MARK SCHUMACHER AND ANDREA SCHUMACHER, *et al.*, | : : : | Case No. 1:13-cv-00232 |
| Plaintiffs, | : : | Judge Timothy S. Black |
| v. | : : | |
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, *et al.*, | : : : | |
| Defendants. | : | |

ORDER GRANTING
DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS
IN THE SECOND AMENDED COMPLAINT (DOC. 34)

This civil action is before the Court on Defendants' motion to strike class allegations (Docs. 34, 35)[1] and the parties' responsive memoranda (Docs. 40, 42).

I. FACTUAL BACKGROUND AS ALLEGED BY PLAINTIFFS

The standard homeowners policy sold in the United States is referred to as an "HO0003" and includes the following coverages: Coverage A (for the dwelling), Coverage B (other structures), Coverage C (personal property) and Coverage D (loss of use) (Doc. 33 ¶¶ 22-26.)[2] Through an endorsement known as its "Defender Endorsement," State Auto markets a product to its customers that professes to provide "100% replacement cost coverage" (*id.* ¶ 33). It also purports to provide an additional

---

[1] Defendant State Auto Insurance Company of Ohio was granted leave to join in this motion (filed by Defendants State Automobile Mutual Insurance Company and State Auto Property and Casualty Insurance Company) by Notation Order docketed 01/22/2015.

[2] State Auto sells a slightly different version of policy HO0003, known as Securgard (Doc. 33 ¶ 32).

amount of insurance, up to 25% of the Coverage A limits, if losses under Coverage A exceed the liability limit (*id.* ¶ 35). According to Plaintiffs, use of the catch-phrase "100% replacement cost coverage" in the Defender Endorsement creates an impression that a homeowner needs to purchase this endorsement in order to be adequately insured (*id.* ¶ 34). However, as long as the structures are insured at 80% of their full replacement cost, policy HO0003 provides that protection (*id.* ¶ 32).

Policyholders with the Defender Endorsement give State Auto full authority to adjust the Coverage A limit (and corresponding premium) in accord with property evaluations made by State Auto and any increases in inflation (*id.* ¶ 36). Enter State Auto's "Homeowners Remediation" plan, introduced in 2009 (*id.* ¶¶ 38-39).

Policies with the Defender Endorsement, through application of its "Insurance-to-Value" Program ("ITV program"), allowed State Auto to recoup substantial underwriting losses, caused by claims made in connection with a variety of natural disasters, by unilaterally increasing its policyholders' Coverage A limits. This action, in turn, automatically increased the limits for Coverage B, Coverage C and Coverage D, as all three are dependent on Coverage A. These upward adjustments naturally resulted in higher premiums being paid.

Further, these increases effectively eliminated any chance that State Auto ever would be required to provide the 25% bonus guaranteed by the Defender Endorsement. In essence, roll out of the ITV program allowed for collection of extra revenue without taking the more transparent step of raising premium *rates*, an approach to which policyholders are characteristically averse. (*Id.* ¶¶ 40-46.)

According to Plaintiffs, State Auto intentionally overstated the costs to rebuild their homes, such that they were charged for a benefit that they did not need, and, in the event of an occurrence, would never realize.  Plaintiffs paid more, but could never have recovered more, as victims of the enhancing effect of Defendants' ITV program vis-à-vis their Defender Endorsement.  Plaintiffs contend that State Auto's plot to grow its premium revenue by selling an overpriced and superfluous product to its insureds, particularly those with whom it had on-going relationships, amounts to a tortious breach of the duty of good faith and fair dealing (*id.* ¶¶181-199), negligent misrepresentation and fraud (*id.* ¶¶ 200-217), fraudulent inducement (*id.* ¶¶ 226-236), and a violation of the Ohio Deceptive Trade Practices Act (*id.* ¶¶ 218-225).[3]  Plaintiffs seek to bring this action on behalf of themselves and:

> [A] class of persons or entities in the States of Ohio, Kentucky, Tennessee, Michigan, Pennsylvania, West Virginia, Indiana, Illinois, and Wisconsin who purchased State Auto Homeowners Insurance with State Auto's Defender Endorsement prior to 2009, and subsequently had their policy limits and premiums **unilaterally** increased after 2009 by State Auto **under the guise of providing adequate replacement cost coverage**.

(*Id.* ¶ 172 (emphasis added).)  Plaintiffs seek certification pursuant to Rule 23(b)(3) (*id.* ¶ 179).

## II.    STANDARD OF REVIEW

"The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required."

---

[3] The Court previously dismissed Plaintiffs' contract claims (Doc. 29 at 12-14, 34).

*Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011).

A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011). A court may properly strike class allegations prior to discovery where discovery would not have "alter[ed] the central defect in th[e] class claim." *Id.* at 949 (affirming the district court's judgment striking class allegations and dismissing a lawsuit prior to discovery, finding that the defect in the class action at issue involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering."). In fact, this Court has previously struck class allegations on this basis. *Rikos v. Proctor & Gamble Co.*, No. 1:11cv226, 2012 WL 641946, at *4 (S.D. Ohio Feb. 28, 2012).

### III. ANALYSIS

Civil Rule 23 governs class actions brought in federal courts. To obtain class certification, a plaintiff must meet all of the following prerequisites of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Pilgrim*, 660 F.3d at 945. Once the Rule 23(a) requirements are satisfied, a party seeking class certification also must

show that the proposed class is maintainable under one of the three provisions of Rule 23(b).

Relying on the allegations within the Second Amended Complaint, Defendants observe that the crux of Plaintiffs' claims centers on the contention that Plaintiffs bought some undefined amount of homeowners insurance coverage that they did not need by virtue of their purchase of a State Auto Defender Endorsement; and Plaintiffs seek, in damages, the difference between the premiums they paid for the "inflated" coverage limits versus what they should have paid for ones "appropriately set" (Doc. 34, Exh. A (Plaintiffs' Rule 26 Disclosures) at 4). But Defendants also observe that Plaintiffs acknowledge that their annual policies were about to expire and, as part of the renewal process, State Auto reevaluated the replacement costs of their homes on a case-by-case basis that resulted in proposed new (and increased) coverage limits (Doc. 33 ¶¶ 49-54). That reevaluation and consequent revision to coverage limits was based on information conveyed by Plaintiffs to their insurers by virtue of conversations with their insurance agents, completion of worksheets regarding any structural changes to their homes, and interviews with and property inspections conducted by third-party representatives. Accordingly, Defendants claim that the class allegations should be stricken because: (1) the proposed class definition is vague, argumentative and implicates the merits of Plaintiffs' claims, and thus is not ascertainable; (2) Plaintiffs cannot satisfy the commonality requirement of Rule 23(a)(2) or the predominance and superiority requirements of Rule 23(b)(3); and Plaintiffs cannot satisfy the typicality requirement of Rule 23(a)(2).

### A. The Putative Class Is Not Ascertainable

Before analyzing the requirements of Rule 23(a), a court should first consider whether a precisely-defined class exists and whether the named plaintiffs are members of the proposed class. *Givens v. Van Devere, Inc.*, No. 1:11-cv-666, 2012 WL 4092803, at *13 (N.D. Ohio Apr. 12, 2012) (Report and Recommendation), *adopted* 2012 WL 4092738 (N.D. Ohio Sept. 17, 2012); *Berger v. Cleveland Clinic Found.*, No. 1:05-cv-1508, 2007 WL 2902907, at *23 (N.D. Ohio Sept. 29, 2007). Although not an express requirement of Rule 23, "ascertainability goes to whether the class has been defined such that it encompasses an identifiable group." *Stuart v. Cheek & Zeehandelar*, 252 F.R.D. 387, 391 (S.D. Ohio 2008) (Marbley, J.). The "touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership." *Id.*

Defendants maintain that the proposed class definition is vague because there is no objective method to determine whether a particular coverage limit increase was made "unilaterally" or "under the guise of providing adequate replacement cost coverage." As recounted by Plaintiffs in the Second Amended Complaint, they (and members of the proposed class) received a "standard work sheet" regarding the characteristics of their homes and spoke with third-party representatives from Marshall & Swift/Boeckh for the purpose of documenting their values (Doc. 33 ¶¶49-54). Consequently, Defendants posit, any increases are more correctly termed "collaborative" rather than "unilateral." Yet even if both pieces of this "argumentative" language were excised, thus defining the proposed class to include all policyholders who purchased the Defender Endorsement

6

whose coverage limits increased since 2009, it would nonetheless remain overbroad. Because Plaintiffs allege that they have not made any "significant improvement" to their homes, and thus their coverage limits should not have increased so dramatically (*id.* ¶¶ 75, 77; 101, 103; 127, 129; 152, 154), Defendants reason that insureds whose coverage limits increased but who *did* make "significant improvements" to their homes ought not be members of the proposed class. And the issue of how to assess what constitutes a "significant improvement"—and whether, on a property-by-property basis, it has been made—is without any objective measurement as the class definition now stands.

Plaintiffs' arguments in opposition are unavailing. Without question, the plain meaning of the phrase "under the guise of" is argumentative. So, too, is the connotation that Plaintiffs seek to attribute to the word "unilateral," which ostensibly narrows the class to those whose policy limits were inflated "by uniformly **padding** the material and labor costs necessary to replace homes" in execution of the ITV program rather than because of "material changes to a class member's dwelling" (Doc. 40 at 6 (emphasis added)). The problem remains that Plaintiffs provide no objective measure to allow the Court to determine what constitutes a "material" change, or whether one has been made. Additionally, Plaintiffs have not identified a class-wide manner to determine the "appropriate" coverage limits for each of the homes captured in the proposed definition, and additional discovery simply will not serve to cure this defect.

Accordingly, the Court finds that the proposed class is not ascertainable, as it calls for individualized assessments to determine membership.

**B. Neither the Commonality or Typicality Prerequisites of Rule 23(a), nor the Predominance and Superiority Requirements of Rule 23(b)(3), Can be Met**

    **1. Commonality Under Rule 23(a), and Predominance and Superiority Under Rule 23(b)(3)**

        **a. Commonality**

Commonality is determined by whether the issues raised have "the capacity [in] a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (internal quotation marks and citation omitted); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) (test is whether there is a "common issue the resolution of which will advance the litigation[]"). "To demonstrate commonality, plaintiffs must show that class members have suffered the same injury." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). "[T]here need be only one common question to certify a class." *Id*. at 853. "The mere fact that questions peculiar to individual class members could remain does not necessarily defeat a finding of commonality." *Goldson v. Fed. Home Loan Mortg. Corp*., No. 2:08-cv-844, 2010 WL 3786631, at *8 (S.D. Ohio Sept. 28, 2010) (Sargus, J.).

This Court finds instructive the ruling in *Cox v. Allstate Ins. Co.*, No. CIV-07-1449-F (W.D. Okla. Mar. 28, 2012).[4] Plaintiffs claimed that their home was over-insured as a result of Allstate's "Property Insurance Adjustment ("PIA")" program, which "automatically adjust[ed] dwelling limits coverage based on construction cost indices

---

[4] This unpublished Memorandum and Order is discussed in the instant Motion to Strike and attached as its Exhibit B

8

provided by an independent company, Marshall and Swift /Boekh[]" (Doc. 34, Exh. B at 4 n.3). Allstate argued that simply because use of the PIA may have resulted in the named plaintiffs' home being over-insured did not mean that *all* members of the putative class were likewise over-insured. Moreover, determining whether each policyholder was over-insured, and thus injured, Allstate contended, would require individualized consideration on a file-by-file basis. The court agreed, and ruled, citing *Dukes*, 131 S. Ct. at 2251, that plaintiffs failed to establish commonality because a classwide proceeding would not "generate common *answers*" (Doc. 34, Exh. B at 11). As described, Allstate's PIA program operates in a manner nearly identical to State Auto's ITV program (as it affects its Defender Endorsement) at issue now. Applying *Dukes*, this Court also finds a lack of commonality here.

This Court is likewise persuaded by the reasoning in *Gooden v. SunTrust Mortgage, Inc.*, No. 2:11-cv-2595, 2013 WL 6499250 (E.D. Cal. Dec. 11, 2013). There two named plaintiffs alleged that their mortgage company unnecessarily added coverages and increased their homeowners insurance limits. They moved to certify a class of mortgagors "who were force placed for hazard insurance in excess of the lesser of (1) the replacement cost of the property or (2) the greater of the unpaid principal balance at the time of force placement and 80% of the replacement cost of the property" as of a particular date. *Id.* at *3. The federal court in *Gooden* denied certification, deciding that individualized issues regarding replacement cost value doomed the class claims. *Id.* at *6 ("[A]scertaining the classes and ultimately determining Defendant's liability would require the Court to examine the individual replacement value of each class member's

9

home to determine if they suffered an actual injury from the force placement of policies. Such an individualized inquiry makes certification of this claim inappropriate.")

As Defendants in this case correctly point out, the common law and statutory fraud counts pled are tethered to "a host of issues related to each Plaintiff's specific coverage limits[]" (Doc. 35 at 12).  Plaintiffs generally reference, but do not specifically identify, the actual construction costs necessary to repair or replace any of their homes during any portion of the applicable time band.  Yet it is a determination of these very costs that drives whether Plaintiffs' coverage limits were "appropriately set" versus "inflated." Moreover, each inquiry requires meticulous attention not only to the property itself, but also to its geographic location and the timing of the repair or replacement.

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012), does not dictate a different result, as it did not involve disputes with respect to coverage limits, home valuations, or premium calculations.  Rather, plaintiffs there sought to certify a class of persons who were charged local government taxes on premium payments that either were not owed or at rates higher than permitted.  Their "common contention" that was "capable of classwide resolution" was that use of geocoding software could have prevented the tax misassignment and, so, the harms suffered by all class members. Accordingly, Rule 23(a)'s commonality—and typicality—requirements were satisfied. *Id.* at 542-44.  But *Dukes* defines "capable of classwide resolution" to mean that determination of the "truth or falsity" of the "common contention" will resolve an issue that is "central" to the validity of each one of the claims "in one stroke." *Id.* at 542 (quoting *Dukes*, 131 S. Ct. at 2551).  Plaintiffs' contention here, while key, is not

10

necessarily conclusive, and obviously more than a single stroke will be required to determine "appropriately set" coverage limits.

Accordingly, the Court finds that the commonality prerequisite of Rule 23(a) cannot be met.

### b. Predominance

To satisfy the predominance requirement of Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members." *See Pilgrim*, 660 F.3d at 946. It is imperative that the proposed class be "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 632 (1997). A court must determine if the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability has been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (internal quotation marks and citation omitted).

The Court agrees with Defendants that, in this instance, individualized issues will indeed "overwhelm" any common questions. Plaintiffs cite this Court's decision in *Cowit v. CitiMortgage, Inc.,* No. 1:12-cv-869, 2013 WL 940466 (S.D. Ohio Mar. 8,

2013), and urge that the Court wait for determination of the question of predominance until after preliminary discovery has occurred.  In Plaintiffs' view, State Auto engaged in a common course of conduct of inflating the amount of the cost of materials necessary to repair or rebuild so as to justify an increase in coverage limits (Doc. 40 at 16).  *Cowit*, however, is not apposite.  There plaintiff had entered into a note and mortgage with defendant that required him to pay any costs or expenses actually incurred by defendant in enforcing those instruments.  Plaintiff defaulted and defendant foreclosed, incurring $33 in court costs.  Plaintiff then entered into a contract to sell his real property, and the pay-off letter he received included those costs.  The foreclosure was dismissed and the costs refunded to defendant's counsel, but that refund was never returned to plaintiff as borrower.  *Id.* at *1.  This Court concluded that the predominance requirement was met, because there were "no individualized facts related to class members' conduct or state of mind." *Id.* at *5.  Rather, the *only* conduct at issue was whether defendant consistently retained refunded court costs that belonged to its borrowers. *Id*.

It is not so here.  Defendants' liability and Plaintiffs' damages will hinge on a case-by-case analysis of the replacement costs (including, as one component, the cost of materials) of every insureds' home, discernment of which will require a thorough analysis.  Furthermore, unlike in *Cowit*, issues of reliance abound.  "[A] fraud class action cannot be certified when individual reliance will be an issue. *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000) (internal quotation marks and citation omitted).  "'Fraud actions must therefore be separated into two categories:  fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on

12

individualized misrepresentations. The former are appropriate subjects for class certification . . . . Where there are material variations in the nature of the misrepresentations made to each member of the proposed class, however, class certification is improper . . . .'" *Lichoff v. CSX Transp., Inc.*, 218 F.R.D. 564, 571 (N.D. Ohio 2003) (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)).

Plaintiffs argue that reliance may be presumed or inferred when the alleged fraudulent statements are made "through uniform materials sent to each member of the class," citing *Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 519-21 (N.D. Ohio 2008). However, the alleged fraud in *Stanich* was an insurer offering identical homeowners policies at multiple prices, with a failure to disclose a lower-priced option. The court concluded that a presumption of reliance attached because one could assume that the cheaper policy—as all things were otherwise equal—would be preferred had the disclosure been made.

Here, however, affirmative statements—in contrast to across-the-board omissions—are at issue. Plaintiffs were consulted regarding the characteristics of their homes and spoke with third-party representatives for the purpose of documenting their values. In contrast to *Stanich*, these circumstances are more akin to those facing the employer policyholders who alleged that their insurers defrauded them by charging excessive premiums on workers' compensation plans, the cost of which they negotiated. *See Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205 (5th Cir. 2003). In *Sandwich*, the Fifth Circuit concluded that the district court abused its discretion in certifying a class, observing that the trier of fact ultimately would need to

13

decide "whether a specific policyholder thought an invoice complied with the approved rate and paid an inflated premium in reliance on that belief." *Id.* at 221. A comparable individualized policyholder assessment will be necessary here.

Accordingly, because the issues at hand are not subject to generalized proof, the Court finds that the predominance requirement of Rule 23(b) cannot be met.

### c. Superiority

A class action solves the problem of small individual recoveries "by aggregating the[m] into something worth someone's (usually an attorney's) labor." *Windsor*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). Lacking predominance, however, this Court need not evaluate whether a class action is the superior method of litigating the questions presented. The property-by-property survey the Court identifies as required would, by necessity, fragment into countless mini-trials. Accordingly, a class action would not be the superior means of resolving this case.

### 2. Typicality Under Rule 23(a)

Although commonality and typicality are separate and distinct requirements, they "tend to merge" and are often discussed together. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. "There must be some connection . . . between the merits of each individual claim and the conduct affecting the class. Absent such a connection, there is no basis upon which to fashion class-wide relief." *Romberio v. UnumProvident Corp.*, 385 Fed. App'x 423, 431 (6th Cir. 2009). "Where a class definition encompasses many individuals who have no

14

claim at all to the relief requested, or where there are defenses unique to the individual claims of the class members . . . the typicality premise is lacking, for—under those circumstances—it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." *Id.*

Defendants contend that typicality is absent because Plaintiffs cannot show that every person in the proposed class actually wants their coverage limits reduced, possibly owing to "material changes" made to their home, or that no class member would be hurt should a mass reduction result. Plaintiffs counter that they "do not challenge that policy limits **should** rise when material changes are made to a home and do **not** advocate for any reduction in policy limits associated with such changes[]" (Doc. 40 at 15 (emphasis added)). But Plaintiffs response begs the question, and it is same one associated with the discussions regarding ascertainability, commonality and predominance. Whether "material" or "significant" changes have been made to a home is not susceptible to an objective measurement. Nor is there an objective metric to decide "appropriate" (versus "inflated") coverage limits, even assuming that the absence of any such changes could be established. Here the claims at issue are inherently individualized. Accordingly, the Court finds that the typicality prerequisite of Rule 23(a) cannot be met.

## IV. CONCLUSION

Wherefore, for the reasons stated, the Court finds that the proposed class is not ascertainable, and it cannot satisfy the commonality and typicality prerequisites of Rule 23(a), nor the predominance and superiority requirements of Rule 23(b). Therefore,

Defendants' Motion to Strike Class Allegations in the Second Amended Complaint (Doc. 34) is **GRANTED**.

    **IT IS SO ORDERED**.

Dated: 2/2/15                                                *s/ Timothy S. Black*
                                                                Timothy S. Black
                                                                United States District Judge